**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**AMY GOLEY**                                                                           **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 3:15-cv-00277-DPJ-FKB**

**ELWOOD STAFFING INC.**
**MARK S. ELWOOD**
**MICHAEL STOCKARD, JR.**
**LISA ELLIOTT**                                                                       **DEFENDANTS**

**<u>MEMORANDUM IN SUPPORT OF</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

COME NOW, Defendants Elwood Staffing Services, Inc., incorrectly identified as Elwood Staffing Inc. in the Complaint ("Elwood"), and Michael Stockard, Jr. ("Stockard") (collectively "Defendants"), by and through their counsel of record, and submit this Memorandum in Support of their Motion for Summary Judgment.  There are no disputed issues of material fact, and Defendants are entitled to judgment on each of Plaintiff Amy Goley's ("Plaintiff" or "Goley")  claims.

**<u>INTRODUCTION</u>**

This lawsuit arises from the termination of Plaintiff Goley's employment with Elwood. Goley's employment was terminated after she engaged in inappropriate behavior at a sales show in Texas the week of October 20, 2014.  Goley's coworkers reported that Goley's attendance was erratic and when she attended events, her behavior was inappropriate, including scratching out her identifying information on her exhibitor's badge, and then proceeding to distribute gift bags with inappropriate contents to prospective customers attending the show.  Goley gave one vendor stool softener.  Goley had also purchased women's panties and laxative pills to distribute. Goley's conduct at the sales show was against the backdrop of her persistent failure to communicate and coordinate with both her direct supervisor and other Elwood managers.  Thus,

when Goley behaved inappropriately at an oil and gas show while representing Elwood and then refused to accept responsibility for her actions, Elwood determined that Goley was not a good fit for the Company and terminated her employment October 24, 2014.

Goley filed her EEOC charge of discrimination and this lawsuit, claiming she was subjected to discrimination, retaliation and harassment in violation of the Americans with Disabilities Act ("ADA"), because she was perceived as disabled due to alcoholism.  Goley also claims Stockard made defamatory statements about her.[1]  Goley's allegations lack evidentiary support, and her claims are without merit.  Defendants are entitled to summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A      Goley's Employment with Elwood

Goley was hired by SOS Employment Group ("SOS") on August 27, 2012 as Branch Manager in Jackson, Mississippi. *Goley Dep., Ex. "A," p. 46-48; Application for Employment, Att. "A-1," to Goley Dep.*  Elwood acquired SOS in February 2013, and the transition from SOS to Elwood was completed by January 2014. *Perkins Declaration, Ex. "B."* Elwood is a family-owned and operated staffing company headquartered in Columbus, Indiana. *Id.* As a staffing company, Elwood operates as an independent contractor to its client companies and supplies those client companies with contingent workforce associates based upon client demand. *Id.* Elwood's primary business is temporary help services. *Id.*  Elwood is an equal opportunity employer and does not discriminate on the basis of disability or any other characteristic protected by law. *Id.; Elwood Fair Employment Policies, Att. "B-1" to Perkins Dec.*  Elwood prohibits harassment or other discriminatory conduct of any kind. *Id.*  Goley acknowledged Elwood's policies December 23, 2013. *Employee Acknowledgement of Employee Handbook, Att. "A-16"*

---

[1] In its Order dated July 1, 2016, the Court dismissed all claims against Defendants Mark S. Elwood and Lia Elliott (incorrectly identified as Lisa Elliott in the Complaint). (Doc. 39).

*to Goley Dep.; see also Employment Policies Acknowledgement & Agreement, Att. "A-15" to Goley Dep.*

In January 2013, Goley notified her SOS supervisor that she and her family were moving from Jackson to Oklahoma because her husband had been transferred by his company and she wanted to be near family. *Goley Dep., Ex. "A," p. 51.* According to Goley, SOS initially offered Goley a Branch Manager position in Oklahoma City. *Id. at p. 52.* However, Goley testified that prior to leaving Jackson, District Manager Holly Carattini contacted her and stated that the Company had a greater need for sales and that Goley would be a Business Development Manager, not a Branch Manager. *Id. at p. 65-66.* There were no Branch Manager openings in Oklahoma at the time. *Id.* Goley accepted the position of Business Development Manager and began in late May 2013, reporting directly to Carattini. *Id. at p. 66, 69-70; Perkins Dec., Ex. "B;" Employee Change Form, Att. "A-2" to Goley Dep.; Letter of Transfer, dated April 22, 2013, Att. "C-1" to Perkins Dep.*

According to Goley, she and Carattini had known each other since high school. *Goley Dep., Ex. "A," p. 44-45.* However, Goley took issue with Carattini's management style. *Id. at p. 69-71.* Goley claims she felt "singled out" by Carattini and believes this was Carattini's attempt "not [to] appear [to] the other employees that she was showing favoritism" to Goley because they were friends. *Id. at p. 71.* However, Goley agrees Carattini frequently treated other employees in a similar manner. *Id. at p. 76-77.* After approximately five (5) months, Goley requested that Elwood change her position so that she would no longer report to Carattini because she "felt it was damaging [their] relationship as friends." *Id. at p. 79.*

Elwood approved Goley's request and in October 2013, James Perkins began supervising Goley. *Id. at p. 78-84; Perkins Dec., Ex. "B."* By January 2014, Goley was no longer under

Carattini's management but was solely under the direction of Perkins. *Goley Dep, Ex. "A" at p. 81, 84.* Nevertheless, Goley continued to have problems getting along with Carattini and offered to resign. *Id. at p. 79-84; Perkins Dec., Ex. "B."* Rather than accept her resignation, Elwood attempted to work with Goley to allow her to continue to work under Perkins. *Goley Dep, Ex. "A" at p. 84; Perkins Dec., Ex. "B."* Because of Goley's conflict with her former manager, Carattini, Elwood assigned Goley an expanded sales area beyond Oklahoma and allowed her to sell in multiple territories. *Perkins Dep., Ex. "C," p. 83; Perkins Dec., Ex. "B."* Goley cannot identify any other employee who was given such an opportunity after strife with their supervisor. *See Perkins Dep., Ex. "C," p. 83.* Goley repeatedly failed to communicate with Perkins and other managers, and often traveled to areas and made contacts with potential customers without coordinating with or even notifying the individuals in charge of those territories. *Id. at p.66; Perkins Dec., Ex. "B."* Understandably, this lack of communication and overlap of sales efforts led to significant frustration within the Company. *Perkins Dep., Ex. "C," p. 88-91; Perkins Dep., Ex. "B."* Goley testified that she offered to resign again in May 2014, but Elwood again refused to accept her resignation. *Goley Dep., Ex. "A," p. 144-45.*

**B.    Goley's Inappropriate Conduct with Regard to the Odessa Oil Show**

Goley insisted on attending an oil and gas show in Odessa, Texas ("Oil Show") the week of October 20, 2014. *Goley Dep., Ex. "A," p. 114-15; Perkins Dep., Ex. "C," p. 80; Perkins Dec., Ex. "B."* As background, prior to the Oil Show, Goley asked Perkins if she could attend. *Perkins Dep., Ex. "C," at p. 49-50; Perkins Dec., Ex. "B."* Goley represented that she had already purchased a nonrefundable ticket to fly to the area and planned to attend the Oil Show. *Id.* Goley admits that Elwood did not ask her to attend the show and that she had been specifically instructed to be "hands-off" because Elwood already had another team with a sales

4

plan in place for the event. *Goley Dep., Ex. "A," p. 114-15, 117; Perkins Dec., Ex. "B."*
Regardless, Goley did attend the show and stayed in a condominium with other Elwood
employees. *Goley Dep., Ex. "A," at p. 115.* Goley admits that she refused to wear a shirt with
the Elwood logo like the other employees at the show and that she wore a name tag with another
company's name on it that she marked out. *Id. at p. 129-30, 133.* Goley admits she did not
attend all of the events at the show. *Id. at p. 126.* Goley also admits she passed out "trick or
treat" bags to show attendees as a way of indirectly selling to potential customers, even though
she had been told to be hands off with regard to sales at the event. *Id. at p. 127-28.* In the bags,
Goley admits she included items such as laxative pills, stool softener, and a very large pair of
women's underwear. *Id. at p. 128, 136-38; Photograph, Att. "A-18" to Goley Dep.* While Goley
testified that she did not hand out the underwear, she also testified that she had intended to do so
and that she did hand out stool softener to show attendees. *Goley Dep., Ex. "A," p. 128, 136-38.*

Goley's colleagues were alarmed and embarrassed by Goley's behavior and complained
to Elwood. *Perkins Dep., Ex. "C," p. 45-48, 54-57; Perkins Dec., Ex. "B;" Email Statement of
Holly Lathrop, Att. "B-6;" Email Statement of Kani Thompson, Att. "B-7;" Email Statement of
Del'Ynda Young, Att. "B-8."* Goley's supervisor, James Perkins, contacted her, seeking
clarification of her activities at the show and directing her to arrive on time to the show each day.
*Perkins Dep., Ex. "C," at p. 48-49; Perkins Dec., Ex. "B."* When Perkins learned that Goley
had a pair of women's underwear to pass out at the show, he again contacted Goley who laughed
off his concern and told him that they were "granny panties." *Perkins Dep., Ex. "C," p. 55-57;
Perkins Dec., Ex. "B."* In addition to his concerns about Goley's behavior at the show, Perkins
felt that Goley had been untruthful by representing that she already had a nonrefundable airline
ticket to the event, when in actuality she traveled to the event using a rental car. *Perkins Dep.,*

*Ex. "C,"p. 49-50; Perkins Dec., Ex. "B."*  Elwood had not planned for Goley to go to the oil and gas show, but Perkins had given her permission to attend because she had told him that she had already purchased a nonrefundable plane ticket. *Perkins Dep., Ex. "C," p. 93-94; Perkins Dec., Ex. "B."*  Based on Goley's refusal to accept responsibility for her persistent failure to communicate, inappropriate actions at the oil and gas show, and untruthfulness regarding her transportation to the show, Perkins determined that Goley was not a good fit for Elwood. *Perkins Dep., Ex. "C,"p. 60, 98; Perkins Dec., Ex. "B."*  Perkins terminated Goley's employment when she returned home from the oil and gas show on October 24, 2014. *Perkins Dep., Ex. "C," p.60; Employee Separation Form, Att. "B-10" to Perkins Dec.*

Goley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") then this lawsuit, alleging claims of discrimination, retaliation, and harassment in violation of the ADA and claims of defamation and tortious invasion of privacy under Mississippi common law.[2]  This Court previously dismissed all claims against Individual Defendants Mark Elwood and Lia Elliott and dismissed Goley's claims under the ADA and her state law claim for invasion-of-privacy against Individual Defendant Michael Stockard. (Doc. 39.)  The only claims remaining for adjudication are Goley's claims against Elwood for alleged violations of the ADA and her claims of defamation brought under state law.[3]  None of Goley's claims have merit, and Defendants are entitled to summary judgment.

---

[2] While this Court granted Plaintiff's Motion to amend her Complaint, Plaintiff has not filed an amended Complaint.

[3] To the extent Goley's Complaint purports to assert an invasion of privacy claim against Elwood directly, Defendants contend the same was properly dismissed at the motion to dismiss stage.  However, out of an abundance of caution, Defendants further contend that Goley cannot show that Elwood is liable for any tortious invasion of her privacy as there is no evidence anyone connected with Elwood communicated any of Goley's private information to the "public at large" as required for such a claim. *See Ayles ex rel. Allen v. Allen*, 907 So. 2d 300, 306 (Miss. 2005); *Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 396 (Miss. 2001); *McGrath v. Empire Inv. Holdings, LLC*, 2013 WL 85205, at *6 (N.D. Miss. Jan. 7, 2013); *see* Restatement (Second) of Torts § 652E.

# LEGAL ARGUMENT

### A. Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A complete failure of proof on an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 317.

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Factual controversies are only to be resolved in favor of the non-movant when "both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  In responding to Defendants' motion, Goley must produce "significant probative evidence" to support his claim. *First National Bank of Commerce v. Monaco Agency, Inc.*, 911 F.2d 1053, 1057 (5th Cir. 1990) ("A mere scintilla of evidence in support of the plaintiff's position is insufficient to survive summary judgment.").

**B. Goley's claim against Elwood for intentional discrimination in violation of the Americans with Disabilities Act fails as a matter of law.**

The ADA prohibits employers from discriminating against qualified individuals with a disability 42 U.S.C. § 12112, *et seq.* Where, as here, a plaintiff offers no direct evidence of discrimination, the burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies to the summary judgment analysis of an ADA discrimination claim. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

Elwood anticipates Goley may urge the Court to accept inadmissible hearsay as direct evidence of her disability discrimination claim. Goley claims employees at Elwood's Jackson, Mississippi location told her that another employee had told them that members of management had said that they believed Goley had "fallen off the wagon." *Goley Dep., Ex. "A," p. 101-04.* However, these alleged out of court statements are clearly impermissible hearsay and are, therefore, inadmissible. FED. R. EVID. 802; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). Additionally, even if the Court were to consider Stockard's alleged comment, Goley's testimony is insufficient to defeat summary judgment as the purported comment is no more than a stray remark. *See Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000); *see also Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("A mere 'stray remark' is insufficient to establish age discrimination."); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001). The evidence here shows Stockard's alleged comment was made approximately nine (9) months before Goley's termination, *Goley Dep., Ex. "A," p. 100, 102-03, 105*, and that Goley's immediate supervisor, James Perkins, not Stockard, had the authority and made the decision to terminate her employment. *Perkins Dep., Ex. "C," p. 60, 98; Perkins Dec., Ex. "B."* These alleged comments are not direct evidence of disability

discrimination. *See Auguster*, 249 F.3d at 405 (holding that a comment made nearly a year before the adverse employment decision that appeared unrelated to the decision was a stray remark); *see also Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 344 (5th Cir. 2002); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) ("where comments are vague and remote in time they are insufficient to establish discrimination"); *Rubinstein,* 218 F.3d at 401 (concluding that comments were stray remarks when plaintiff had failed to offer evidence that they were proximate in time or related to his failure to receive a raise or a promotion).

To establish a *prima facie* case of intentional discrimination under *McDonnell Douglas*, Goley must show that she: (1) is disabled, has a record of having a disability, or is regarded as disabled; (2) was qualified for the job; (3) was subjected to an adverse employment action; and (4) was replaced by or treated less favorably than a non-disabled employee. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).

Only if Goley satisfies her *prima facie* case does the burden of production shift to Elwood to rebut the *prima facie* case by articulating a legitimate, nondiscriminatory reason for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). However, the ultimate burden of proving intentional discrimination remains with Goley at all times. *Id.* at 507. Goley "must put forward evidence rebutting each of the nondiscriminatory reasons [Elwood] articulates" and must show "that a discriminatory motive more likely motivated [Elwood's] decision . . . or that [Elwood's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citation and internal quotation marks omitted).

### 1. Goley cannot establish she is disabled under the ADA.

A disability is "a physical or mental impairment that substantially limits one or more" of an individual's major life activities; 2) "a record of such impairment;" or 3) "being regarded as

9

having such an impairment." 42 U.S.C. § 12102(2).  In her Complaint, Goley simultaneously claims she "is a qualified individual with a disability, is perceived as disabled, and/or has a record of a disability . . . ."  Elwood address each of these meritless contentions in turn.

Goley testified that she is a recovering alcoholic. *Goley Dep., Ex. "A," p. 106.*  However, this testimony alone does not establish that Goley has a disability under the ADA.  Courts in the Fifth Circuit have held "that there is no *per se* rule that categorizes recovering alcoholics and drug addicts as disabled . . . ." *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 688 (M.D. La. 2013).  Rather, the Court "must engage in an individualized inquiry to determine whether a particular plaintiff, who is a recovering alcoholic, qualifies as disabled, because of [her] addiction." *Radick v. Union Pac. Corp.*, 2016 U.S. Dist. LEXIS 19622 (S.D. Tex. Jan. 25, 2016) (citing 29 C.F.R. § 1630.2(j)(iv); *Oxford House*, 932 F.Supp.2d at 688).  To prove that she is disabled, Goley "must provide evidence that [her] alcoholism substantially limits [her] ability to perform a major life activity, as compared to most people in the general population." *Id.* (citations omitted).  Notably, where the major life activity in question is the ability to work, a plaintiff must show an inability to work in a broad class of jobs rather than relying on the inability to perform the particular job of plaintiff's choosing. *Mora v. Univ. of Texas Sw. Med. Ctr.*, 469 F. App'x 295, 297–98 (5th Cir. 2012).  Here, Goley does not claim to be substantially limited in any major life activity as a result of her past alcohol abuse and therefore cannot show she is disabled under the ADA.

Similarly, Elwood can offer no evidence that Elwood regarded her as having such an impairment.  Under the ADA, a person is "regarded as" disabled if she: "1) has an impairment that is not substantially limiting, but that her employer perceives to be substantially limiting; 2) has an impairment that is substantially limiting only because others' attitudes toward the

impairment; or 3) has no impairment but her employer believes that she has a substantially limiting impairment." *Mahoney v. Ernst & Young LLP*, 487 F. Supp. 2d 780, 810 (S.D. Tex. 2006) (citing *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 287 (5th Cir. 2004)).  Here, Goley testified she "was regarded as having fallen off the wagon and treated differently than others in the company." *Goley Dep., Ex. "A," p. 149-50.*  However, aside from her own conclusory allegations, Goley offers no evidence she was, in fact, regarded as disabled by anyone at Elwood.[4] *See Perkins Dec., Ex. "B."*

### 2. Goley cannot show that she was replaced by or treated less favorably than any non-disabled employee.

Elwood concedes that Goley was qualified for the position of Business Development Manager and that termination for misconduct qualifies as an adverse employment action.[5]  However, Goley cannot establish her *prima facie* case because she cannot show that Elwood hired a non-disabled person to replace her or that any non-disabled employee was treated more favorably under nearly identical circumstances. *See Okoye v. Univ. of Texas Houston Health*

---

[4] As discussed previously herein, Elwood anticipates Goley will rely upon inadmissible hearsay to support her allegations. *See Section B.*  Beyond this inadmissible and impermissible hearsay, Goley can offer no evidence showing anyone at Elwood regarded her as having a substantial limiting mental or physical impairment.

[5] Goley has presented no evidence to support her claim that she was demoted.  Goley testified that she never worked as a Branch Manager in Oklahoma and agrees that prior to her move she was informed the only available position in Oklahoma was as a Business Development Manager, not a Branch Manager position. *Goley Dep., Ex. "A," p. 66, 69-70.*  Elwood never demoted Goley but instead only worked to accommodate her request to move to another state.  Goley also claims Elwood eliminated her sales territories in Oklahoma and Houston.  However, Goley testified that she requested to be removed from the supervision of the District Manager over Oklahoma, Holly Carattini, based on a personality conflict and Goley's concern for their friendship. *Id. at p. 71.*  And Goley admits, with regard to the client in Houston, the local branch is "always supposed to handle the actual servicing and delivery." *Id. at p. 97-98.*  Further, the Fifth Circuit has clearly explained that only ultimate employment decisions "such as hiring, granting leave, discharging, promoting or compensating" are actionable as adverse employment actions for the purposes of discrimination claims. *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).  Accordingly, Goley cannot establish a *prima facie* case of discrimination on the basis of a disability based on her claim of demotion or elimination of her sales territory, and Elwood is entitled to judgment in its favor.

*Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Little v. Republic Refining Co., Ltd*, 924 F.2d 93, 97 (5th Cir. 1991).

Goley cannot identify any non-disabled Business Development Manager who was given permission to sell in multiple territories that failed to communicate and coordinate with her direct supervisor and other Elwood managers, behaved inappropriately at a trade show, and was untruthful to her direct supervisor about travel plans and expenses who was not terminated. Simply put, Elwood did not treat any non-disabled person more favorably under nearly identical circumstances.  Additionally, Elwood did not hire anyone to replace Goley after her termination. *Perkins Dec., Ex. "B."* In fact, Elwood consistently worked with Goley in finding a position for her in Oklahoma when her husband was transferred and created a position for Goley when she was unable to get along with her supervisor, Carattini. *Perkins Dep., Ex. "C," p. 67, 81-82.*

### 3. Goley cannot rebut Elwood's legitimate, non-discriminatory reason for terminating her employment.

Even if Goley could satisfy her *prima facie* burden, which she cannot, Elwood has established a legitimate non-discriminatory reason for her termination.  Elwood terminated Goley's employment after a series of events led her direct supervisor, James Perkins, to the conclusion that she was not a good fit for the Company. *Perkins Dep., Ex. "C," p. 60, 98; Perkins Dec., Ex. "B."*  Specifically, after seeking permission to attend the show, Goley's coworkers reported that Goley's attendance was erratic and when she attended events, her behavior was inappropriate, including scratching out her identifying information on her exhibitor's badge, and then proceeding to distribute gift bags with inappropriate contents to prospective customers attending the show. *Perkins Dec., Ex. "B."*  Goley admits she gave one vendor stool softener. *Perkins Dec., Ex. "B."*  Goley had also purchased women's panties and laxative pills to distribute.  In addition, Perkins learned that despite her representation that she

had already purchased a nonrefundable airplane ticket, Goley instead rented a vehicle to travel to the show. *Id. at p. 96-98.* This conduct was against the backdrop of the Company's frustration with Goley for failing to communicate and coordinate with Perkins and local Elwood managers regarding her sales activities, despite being repeatedly counseled on this issue by Perkins. *Perkins Dep., Ex. "C," p. 88-91.* Perkins terminated Goley's employment after determining that her refusal to accept responsibility for her actions in each of these areas indicated that she was not a good fit for Elwood. *Id.*

Importantly, the law does not require Elwood "to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (citing *Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991) ("even an incorrect belief that an employee's performance is inadequate" is a legitimate reason)). As this Court recently recognized, "[t]he question is whether the employer has an honest belief in its proffered nondiscriminatory reason." *Gibbs v. Kelly Servs.* 2016 WL 868873, at *4 (S.D. Miss. Mar. 4, 2016) (citing *Michael v. Caterpillar Fin. Servs. Corp*., 496 F.3d 584, 598 (5th Cir. 2007)). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact."). Goley can offer no more than her subjective opinion that Elwood's assessment of her performance was incorrect, which is insufficient to defeat Elwood's motion for summary judgment.

**C. Additionally, Goley's claim against Elwood for disability-based harassment fails as a matter of law.**

The Fifth Circuit has recognized a cause of action for disability-based harassment as a hostile work environment under the ADA. *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 232–35 (5th Cir. 2001).  To establish such a claim, Goley must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Id.* at 235–36 (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). The harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236 (internal quotation marks and citation omitted).  To determine if the work environment is abusive, the Court should consider "the entirety of the evidence, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citation omitted).

In the case at bar, Goley has not identified *any* allegedly harassing behavior, much less any harassment based on a purported disability.  Rather, Goley testified that Elwood offered her a new position when her husband's transfer required her to move to Oklahoma, *Goley Dep., Ex. "A," p. 51, 65-66,* and that Elwood worked with Goley again by shifting her position to report to James Perkins when she was unable to get along with Carattini. *Id. at p. 79-84; Perkins Dec., Ex. "B."*  According to Goley, Elwood rejected her offer of resignation on two occasions. *Id. at p. 79-84, 144-45.*  And Goley testified that her conflicts with Holly Carattini were the result of their twenty (20) year friendship, not any alleged disability. *Id. at p. 71, 76-77, 79.*  Importantly, Goley has offered no evidence of any harassment and certainly cannot meet the high standard

required to establish harassment that was so severe or pervasive as to alter the conditions of her employment.

### D. Likewise, Goley's claim against Elwood for unlawful retaliation fails as a matter of law.

A claim of unlawful retaliation under the ADA requires that Goley show: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action. *Seaman v. CSPH*, 179 F.3d 297, 301 (5th Cir. 1999). In the context of a retaliation claim, an adverse employment action is any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). To prove a causal link, Goley must demonstrate that Elwood's action "was based in part on knowledge of [her] protected activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121-22 (5th Cir. 1998).

Again applying the *McDonnell Douglas* framework, if Goley is able to establish a *prima facie* case of retaliation, Elwood must then offer a legitimate, non-retaliatory reason for its action. If Elwood is able to meet this burden of production, Goley must show that "the adverse action would not have occurred 'but for' [Elwood's] retaliatory motive." *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "In order to avoid summary judgment, [Goley] must show 'a conflict in substantial evidence' on the question of whether [Elwood] would not have taken the action 'but for' the protected activity." *Id.* (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)). And, "[w]hile temporal proximity is generally considered an acceptable means of establishing a causal link at the prima-facie stage, it

is not a method of proving 'but for' causation." *Gibbs*, 2016 WL 868873, at *4 (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007)).

Goley claims she contacted Elwood's Director of Human Resources John Delap in February 2014 to report an alleged incident involving comments purportedly made by Regional Sales Manager Kim Staggs to employees at the Jackson, Mississippi branch and relayed to Goley sometime later. *Goley Dep., Ex. "A," p. 104-05.* Goley claims she told Delap that she had heard Staggs had relayed comments about her appearance and behavior that were purportedly made by managers at an Elwood sales meeting the previous month and that Staggs had asked the Jackson employees if they thought it was possible that Goley had "fallen off the wagon." *Id. at p. 103.*

Goley claims that approximately three (3) months later, Elwood took away portions of her sales territory. *Id. at p. 97.* However, Goley was only instructed to allow the local branch in the Houston, Texas market to service a particular client's account after the client shared concerns with Elwood. *Email thread dated May 1, 2014, Ex. "C-13" to Goley Dep.* And Goley admits that, with regard to the client in Houston, the local branch is "always supposed to handle the actual servicing and delivery." *Goley Dep., Ex. "A," p. 97-98.* Elwood emphasized the need for its employees to work together to adequately meet the needs of its clients and encouraged Goley to continue her sales efforts in other markets. *Email thread dated May 1, 2014, "C-13" to Goley Dep.; Perkins Dep., Ex. "C," p. 27-28.*

Importantly, Goley claims she offered her resignation in May 2014 but that Elwood and James Perkins, specifically, refused to accept her resignation and "talk[ed] her out of it." *Goley Dep., Ex. "A," p. 144-45.* Then, in October 2014, at an oil and gas show in Odessa, Texas, Goley admits she engaged in sales efforts without coordinating with Elwood's sales team, *id. at p. 117, 127-28*, and that she purchased such inappropriate items as laxative pills, stool softener,

16

and women's underwear to be handed out to potential customers. *Id. at p. 128, 136-38.* Goley also admits, despite making contact with potential customers on behalf of Elwood, *id. at p. 128,* she refused to wear a shirt with the Elwood logo like the other employees at the show and she wore a name tag with another company's name on it that she marked out. *Id. at p. 129-30, 133.* And Goley admits she did not attend all of the events at the show or even consider herself to be working, despite having specifically requested permission to attend the show. *Id. at p. 126.*

When Goley's colleagues reported her unprofessional behavior to Elwood, Perkins attempted to counsel Goley regarding the need to arrive on time to the show each day and to get her side of the story regarding the inappropriate items Goley had brought to give out to potential clients. *Perkins Dep., Ex. "C," p. 49-50; Perkins Dec., Ex. "B."* When Goley refused to accept responsibility for her conduct at the show, merely laughing off Perkins' concerns, and Perkins learned that Goley had taken a rental car to the event rather than flying as she had previously represented to him in order to secure permission to attend the show in the first place, Perkins determined that Goley was not a good fit for Elwood and terminated Goley's employment. *Id. at p. 45-50, 54-57, 93-94; Perkins Dec., Ex. "B."*

The evidence clearly shows that Perkins and Elwood harbored no retaliatory motive against Goley. To the contrary, Perkins and Elwood terminated Goley's employment only after she repeatedly refused to communicate with her direct supervisor and other Elwood managers regarding her sales activities and after she behaved unprofessionally and inappropriately while representing Elwood at a trade show. *Perkins Dec., Ex. "B."* Had Elwood sought to retaliate against Goley for her February 2014 report, it would have accepted her offer of resignation in May 2014 rather than continuing to employ her for another six (6) months. And the same individual who "talk[ed] her out of" resigning in May 2014, James Perkin, made the decision to

terminate her employment. *Id.*  Goley cannot show any causal connection between her February 2014 report and any adverse action, and she certainly cannot show that "but-for" her report she would have been allowed to perform duties reserved for the local branches or that she would not have been terminated following her inappropriate behavior at the oil and gas show and months-long failure to communicate and coordinate with Elwood management.

**E.  Goley's defamation claims fail as a matter of law.**

**1.  Goley's defamation claims are barred by the applicable statute of limitations.**

Under Mississippi law, claims for defamation are subject to a one-year statute of limitations. MISS. CODE ANN. § 15-1-35. A defamation claim accrues "on the date the allegedly defamatory material is first published to a third person or to the public at large . . . ." *Jack v. Dollar Gen. Corp.*, 2015 U.S. Dist. LEXIS 122665 (S.D. Miss. Sept. 15, 2015) (barring plaintiff's defamation claims where plaintiff filed complaint almost two months after the statute of limitations expired) (quoting *Lane v. Strang Commc'ns. Co.,* 297 F. Supp. 2d 897, 900 (N.D. Miss. 2003)) (further citation omitted).

According to Goley, Blossom and Ainsworth told her in February 2014 that Staggs had told them that, at the January 2014 sales conference, "all the managers were talking about" Goley's appearance and behavior. *Goley Dep., Ex. "A," p. 100, 102-03, 105.*  And Goley testified that Powell Hardy told her in September 2014 that Stockard was the "manager" Staggs had been referring to in February 2014. *Id. at p. 103-04.*  Goley also testified that Powell Hardy told her the comments had allegedly been made by Stockard to Staggs while in a car returning from the January 2014 sales conference. *Id. at p. 105.*  However, Goley did not file her Complaint until April 10, 2015, one (1) year and three (3) months after Stockard's alleged

comments to Staggs and one (1) year and two (2) months after Staggs' alleged comments to Blossom and Ainsworth.

Thus, based on Goley's own testimony, any allegedly defamatory statements were first published to a third-party no later than February 2014 – fourteen (14) months before Goley filed suit. Accordingly, Goley filed her Complaint **at least two months after** the expiration of the applicable statute of limitations, and her claims are therefore barred.

### 2.     Goley's defamation claims are premised solely on impermissible hearsay.

Goley claims Tanya Blossom and Courtney Ainsworth told her in February 2014 that Kim Staggs, Elwood's Regional Sales Manager, had told them that managers had been talking about Goley's appearance and behavior at a recent sales conference. *Goley Dep., Ex. "A," p. 102-03.* Goley also claims Luci Powell Hardy told her in September 2014 that Michael Stockard been the "manager" Kim Staggs had been referring to in February 2014 and that Stockard had made the alleged comments about Goley's appearance and behavior directly to Staggs while in a car returning from the January 2014 sales conference. *Id. at p. 103-04.*

Such out of court statements constitute impermissible hearsay and are, therefore, inadmissible. FED. R. EVID. 802; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[O]n a motion for summary judgment, the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial."). Goley offers only third-hand accounts of what someone purportedly told her that someone else claimed that yet another person allegedly said. In fact, Goley admits she has no first-hand knowledge of any statement allegedly made by Stockard. When asked what specifically Stockard purportedly said to Staggs, Goley testified, "I don't recall what he exactly said since I was hearing it hearsay anyway." *Id. at p. 105-06.* Goley can offer no competent summary judgment evidence that Stockard or anyone else

associated with Elwood ever said anything defamatory about her and her claim must, therefore, be dismissed.

1. **Alternatively, even if Goley's defamation claims are not barred, the same fail as a matter of law.**

To establish a claim for defamation in Mississippi, Goley must show:

(1) a false and defamatory statement concerning the plaintiff;
(2) an unprivileged publication to a third party;
(3) fault amounting at least to negligence on the part of the publisher; and
(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Simmons Law Grp., P.A. v. Corporate Mgmt., Inc.*, 42 So. 3d 511, 517 (Miss. 2010). Publication "includes any communication by the defendant to a third person." *Bussen v. S. Cent. Bell Tel. Co.*, 682 F. Supp. 319, 324 (S.D. Miss. 1987).

Goley testified that the Jackson employees told her Staggs had asked them "whether they thought it was possible [she] had fallen off the wagon." *Goley Dep., Ex. "A," p. 103.* According to Goley, the Jackson employees also claimed Staggs had told them that "all the managers were talking about the way [her] teeth looked and [her] weight loss, that [she] acted crazy at a sales meeting." *Id.* Goley testified later that another former employee told her that Stockard was the manager Staggs had been referring to and that the alleged comments Staggs had relayed to the Jackson employees had been made during a conversation in a car on the return trip from the sales meeting. *Id. at 103-05.* Goley testified that she had heard that Stockard had discussed her appearance with Staggs, that he had informed Staggs that Goley was a recovering alcoholic and that he wondered if she had fallen off the wagon, and that he had discussed his concerns with other unidentified managers at the sales meeting. *Id. at 105-06.*

Goley testified that it was not a secret that she was a recovering alcoholic and that her managers and those she came in contact with already knew. *Id. at 106-07.* Even if the Court

were to accept Goley's second and third-hand accounts of what Stockard allegedly said, Goley's testimony establishes only that Stockard and Staggs voiced concerns about Goley's appearance and behavior at a Company event.   According to Goley, neither Staggs nor Stockard affirmatively stated that Goley had "fallen off the wagon;" rather, Goley's testimony show that, at most, Staggs asked Goley's colleagues for their opinion as to whether they believed it was possible that Goley might have fallen off the wagon and that Stockard had similarly questioned whether she might have relapsed, neither of which constitutes an actionably false and defamatory statement.

Not only does Goley's testimony fail to establish that Stockard made any "false and defamatory statement" about her, under Mississippi law, Stockard's alleged statements fit squarely within the protections of the qualified privilege afforded to employers. *See Bulloch v. City of Pascagoula*, 574 So. 2d 637, 642 (Miss. 1990) ("[A]n employer enjoys a qualified privilege when commenting on personnel matters to those who have a legitimate and direct interest in the subject matter of the communication."); *see also Benson v. Hall*, 339 So. 2d 570, 573 (Miss. 1976) ("The qualified privilege . . . encloses those people who have a legitimate and direct interest in the subject matter of the communication, and publication to them is not actionable.").

Staggs, as the Regional Sales Manager, certainly had a legitimate and direct interest in the subject of Goley's employment and her ability to perform her duties as a Business Development Manager whose primary function was sales. *Goley Dep., Ex. "A," p. 102;   See Barmada v. Pridjian*, 989 So. 2d 359, 362 (Miss. 2008) (holding that statements made by hospital medical director to hospital staff and independent reviewer regarding surgeon's competence were protected by employer-employee qualified privilege); *Young v. Jackson,* 572

So. 2d 378, 383 (Miss. 1990) (holding that statements made by plaintiff's coworkers to other coworkers regarding plaintiff's medical history were protected by qualified privilege where employees had common interest in workplace safety).   And while the privilege may be "overcome by malice, bad faith, or abuse," Goley can offer no evidence that Stockard acted in bad faith or with malice or that he abused the privilege.  *See Barmada v. Pridjian*, 989 So. 2d 359, 362 (Miss. 2008).  For all these reasons, Goley's defamation claim fails as a matter of law.

## **CONCLUSION**

Based on the undisputed material facts and the authority applicable to this cause of action, as fully argued herein, there are no genuine issues of material fact that necessitate a trial. Accordingly, Defendants respectfully request the Court grant summary judgment in their favor as to each of Goley's claims and dismissal of this action in its entirety with prejudice.

THIS, the 21st day of September, 2016.

Respectfully submitted,

BY:     */s/ Robin Banck Taylor*
Robin Banck Taylor (MS Bar No. 100195)
robin.taylor@ogletreedeakins.com
Timothy W. Lindsay (MS Bar No. 1262)
timothy.lindsay@ogletreedeakins.com
Blythe K. Lollar (MS Bar No. 104554)
blythe.lollar@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
100 Renaissance, Suite 200
1022 Highland Colony Parkway
Ridgeland, Mississippi 39157
Telephone: (601) 360-8444
Facsimile: (601) 360-0995

**ATTORNEYS FOR DEFENDANTS**
**ELWOOD STAFFING INC. AND**
**MICHAEL STOCKARD, JR.**

## CERTIFICATE OF SERVICE

I, the undersigned counsel, certify that I electronically filed the foregoing with the Clerk

of the Court using the ECF system which sent notification of such filing to the following:

Bradley S. Clanton
CLANTON LEGAL GROUP, PLLC
P.O. Box 4781
Jackson, Mississippi 39296
Email: brad@clantonlegalgroup.com

**ATTORNEY FOR PLAINTIFF**

This, the 21st day of September, 2016.

/s/ Robin Banck Taylor
Robin Banck Taylor

26222751.1

23